FILED
2011 Apr-12  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **RANDALL W. MILLER** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 5:10-CV-1330-IPJ** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties.

This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff, Randall

Miller, is seeking reversal or remand of a final decision of the Commissioner of

Social Security.  All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for Disability Insurance benefits ("DIB")  due to back-

herniated disk, high blood pressure and migraines, severe pain all the time, limited

range of motion due to back, unable to sit, walk or lift (R. 83).  The administrative

1

proceedings leading to this action began on June 22, 2007,[1] when plaintiff filed an

application for DIB claiming disability beginning May 14, 2007 (R. 56-60).  These

claims were initially denied on July 16, 2007 (R. 43-47).  The plaintiff requested a

hearing, which was held by video hearing in front of an administrative law judge

("ALJ") on July 7, 2009 (R. 28-40).  The ALJ thereafter rendered an opinion

finding that the plaintiff was not under a disability (R. 7-19).  The plaintiff's

request for an administrative review of the ALJ's decision by the Appeals Council

was denied on March 26, 2010 (R. 1-4).  The ALJ's decision thus became the final

order of the Commissioner of Social Security.  *See* 42 U.S.C. § 405(g). This action

for judicial review of the agency action followed (doc. 1).


### Factual Background

Plaintiff, born in 1958, was fifty one at the time of the ALJ decision (R. 32).

He has at least a high school education, along with less than a couple of years of

unfinished schooling at Calhoun College (R. 33).  Plaintiff worked consistently, in

the Navy, from his time leaving Calhoun College up until his retirement from the

Navy in 1998 (R. 33-34, 74).  He then worked from 2000-2007 as a production

---

[1] The ALJ found an application date of May 2, 2007, prior to the onset date (R. 10) consistent with the transmittal (R. 41).

supervisor for a DVD manufacturing company (R. 74). Plaintiff has past relevant work as a production supervisor, which is light work and skilled; maintenance mechanic, which is heavy work and skilled; rigger, which is heavy work and skilled; maintenance mechanic supervisor, which is medium work and skilled; and instructor, which is light work and skilled (R. 37-38).

Plaintiff alleges an inability to work since May 14, 2007, due to his disability. The ALJ has determined that plaintiff has severe impairments of degenerative disk disease of the lumbar spine, right knee ACL deficiency, status post meniscus repair with osteoarthritis, osteoarthritis of the left knee, degenerative changes of the right ankle, left ankle sprain with degenerative changes, and eczema of the hands and legs, and migraines (R. 12). The original injury to plaintiff's back occurred in 1988, when he was in the Navy. Plaintiff had surgery on his back in 1988 and continued to work in the Navy for another decade with no back problems. It was not until 2000 when plaintiff's back began bothering him again (R. 33-34). Plaintiff had surgery to repair a torn meniscus in his right knee in 1987, and plaintiff had shoulder surgery due to a torn rotator cuff in 2003 (R. 16).

Plaintiff claims his back pain, on a scale of 1 to 10 with 10 being worse, is "[s]even and a half to eight every day. Six on a good day, ten on a bad day." He

says he can't sleep for more than a couple hours at a time, has to get up to move around at night, and sleeps on a heating pad all the time.  Plaintiff claims that bending over is a problem for him – "If I bend over frontwards,  have to have help straightening up."  He also testifies that he can only stand for ten minutes before having to sit down due to excruciating pain, that he can only walk half a block and that he does not do any lifting.  Plaintiff testifies that he "can't sit in any one position for more than two, three, four minutes and [he has] to shift and move to another position because the pain starts hurting there too" yet he spends his days sitting on a couch with a heating pad while watching television (R. 35-36).

Plaintiff went to the emergency room on January 8, 2007, due to lower back pain that arose after chopping wood (R. 139-149).  Plaintiff saw Dr. Morris Seymour on January 30, 2007.  Dr. Seymour noted disk space height loss at 3-4, 4-5, and 5-1, but no instability on flexion extension.  He also noted that plaintiff's gait was grossly normal; the spine was without signs of trauma, masses, or unusual hair or pigment; and there was no tenderness of the spinous processes, paraspinal region SI joint, PSIS, CVA or trochanter.  His impression was of lumbar spondylosis and mechanical back pain. Said most of plaintiff's problem was arthritic with multiple level involvement, but there is unfortunately no easy way to reverse that.  He recommended a coordinated physical therapy approach, as well as

4

possibly input from a physiatrist for some facet blocks and to see if he is a candidate for facet rhizotomies or even a spinal cord stimulater.  Noted plaintiff is taking large amounts morphine and Percocet and should not operate a vehicle.  Dr. Seymour set plaintiff up with a rehab specialist (R. 151-152).

Plaintiff visited the Veterans Administration Medical Center (the "VA") on June 14, 2007, for a follow-up appointment relating to his back pain.  Plaintiff had been ordered to undergo physical therapy and to get a TENS unit, but plaintiff missed his appointment for physical therapy and to get the TENS unit.  It was noted that plaintiff had no acute problems at the time and he was instructed to continue his present medications of Morphine and Oxycodone and then return in five months (R. 153-155).  Plaintiff returned on August 8, 2007.  He stated that he had a burning sensation in the middle of his neck that occurred two to three times a month and lasted for a few days.  Plaintiff also complained of moderate to severe back pain that did not radiate, constant throbbing in his right knee, mild and intermittent discomfort and swelling in his left knee, intermittent ankle swelling that was aggravated by prolonged walking or standing, and nummular eczema and dyshidrosis of his hands and legs.  Plaintiff reported he used a cane on an intermittent basis and he continued to take medications.  A physical examination showed a scaly rash on plaintiff's chest, no muscle spasms, no tenderness, and no

guarding movements.  There was also no swelling, effusion or instability, while motor strength was 5/5.  Plaintiff had a full and painless range of motion with dorsiflexion to 20 degrees and plantar flexion to 45 degrees, and repetitive testing showed no change.  X-rays of the left shoulder revealed what appeared to be a prior resection of the distal left clavicle.  The glenohumeral joint was intact and no acute fractures or dislocations were seen.  Bilateral ankle x-rays revealed no fractures, dislocations, or soft tissue abnormalities, and non-post inflammatory enthesophytes were noted at the insertion of the Achilles tendon and plantar fascia, bilaterally.  Bilateral knee x-rays revealed mild to moderate degenerative changes in both knees, more so at the patellofemoral spaces, and no fractures were identified.  X-rays of the lumbar spine revealed moderate, diffuse discogenic degenerative disease, worse at L3-4 with resultant Grade I retrolisthesis of L3 on L4.  X-rays of the cervical spine revealed mild to moderate discogenic degenerative disease (R. 354-388)  On November 14, 2007, plaintiff reported back pain was the same and he did not think it would get better.  Plaintiff reported he failed to go to his appointment to get a TENS unit and indicated he did not want to go.  The examiner discussed plaintiff's narcotic use with him.  Plaintiff reported he was hurting so he had to have it.  The examiner cautioned plaintiff against doing any activities that required mental alertness including driving.  Plaintiff

reported he had run out of his Zocor, but otherwise was taking the same medications.  Diagnoses included chronic back pain and hypertension, and the claimant was instructed to continue his current medications (R. 313).

Plaintiff returned to the Veterans Administration Medical Center on November 5, 2008.  Plaintiff's chronic problems included hypertension, hyperlipidemia, obesity, gastroesophagael reflux disease, and chronic back and knee pain.  Plaintiff reported he had been in another state for the past year and was not taking any VA medications.  Plaintiff denied having any acute musculoskeletal complaints, dermatologic complaints, cardiopulmonary symptoms, mental health complaints, or neurological complaints.  Plaintiff also indicated he wanted to go back on pain medication.  An examination revealed no acute distress and blood pressure of 159/86.  Plaintiff's diagnoses included chronic back and knee pain, and he was given some Tylenol with Codeine.  The examiner reported he had a discussion with plaintiff regarding the fact that plaintiff broke his pain contract, and examiner instructed plaintiff not to get medications elsewhere ( R.304-305).[2] On December 3, 2008, plaintiff returned for a blood pressure check (R. 304).  On January 20, 2009, plaintiff was given a refill on prescriptions for Oxycodone and

---

[2] Plaintiff had been in another state for the last year.  He had not been taking any of his medications (R. 304).

Acetaminophen (R. 302).  On April 6, 2009, plaintiff was given refills for Acetaminophen and Codeine (R. 301).

In February of 2007 plaintiff filed a claim with the VA for an increased evaluation.  In September 2007 the VA awarded plaintiff 80% disability benefits, but denied plaintiff's entitlement to individual unemployability.  The VA found that medical evidence did not indicate increased severity in plaintiff's back disability, and in fact, it found improvement in the range of motion of the lumbar spine.  The VA also found that plaintiff's other service connected benefits had not increased in severity, except for the cervical spine, which warranted the minimum compensable evaluation (R. 284-290).  In coming to its decision denying plaintiff's entitlement to unemployability, the VA stated:

> For a veteran to prevail on a claim based on unemployability, it is necessary for the record to reflect some fact which takes the claimant's case outside the norm of other veterans with the same disability.  The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough to establish entitlement to individual unemployability.  Unemployed and unemployable are not synonymous.  A high rating in itself is not a recognition that the impairment makes it difficult to obtain and keep employment.  Although you may not be able to work in the type of job you previously had because you were required to stand for long periods of time, your disabilities do no prevent you from maintaining any form of gainful employment, such as sedentary work.  Therefore, entitlement to individual unemployability is denied because you have not been found unable to secure or follow any form of substantially gainful occupation as a result of service connected disabilities.  You are considered capable of gainful employment.

(R. 289-290).

At the hearing on July 7, 2009, the ALJ stated that following the VA's determination that plaintiff can perform sedentary work, if plaintiff does not have skills transferable to sedentary work, then he would be disabled at age fifty.  The attorney for plaintiff agreed with that assessment.  The ALJ went on to ask the vocational expert ("VE") about the transferability of skills for someone at the category of *close approaching age*: "do any of [plaintiff's prior] jobs imparagate transferable skills that would provide direct entry into skilled work?"  The VE responded in the affirmative and listed scheduling, record keeping, and inventory as transferable skills.  The VE went on to list sedentary work available to someone with those transferable skills, including personnel manager, manager, and benefits manager.  The ALJ then asked what the effect would be if the "claimant were experiencing pain and discomfort to such an extent that it would take his ability to persist and concentrate for periods up to two consecutive hours at skilled work, let's say, or even semi-skilled work."  The VE found that all work activity would be precluded.  The ALJ then asked what the effect would be if plaintiff "had to take frequent work breaks as a result of his impairments and these frequent work breaks would be beyond those that are generally scheduled.  The VE again found

all work activity would be precluded.  Lastly, the ALJ asked for the effect of

"absenteeism as a result of a combination of impairments...[where] claimant would

miss two or more days of work on a monthly basis."  Again, the VE found all work

activity to be precluded.  The ALJ concluded his questioning of the VE by asking

whether any of the viable manager positions listed earlier by the VE would allow a

sit/stand option.  The VE replied that the three manager positions would allow for

sitting and standing at will (R. 36-39).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on

the claimant, who must prove that due to a mental or physical impairment he/she is

unable to perform his/her previous work. If the claimant is successful the burden

shifts to the Commissioner to prove that the claimant can perform some other type

of work existing in the national economy. *Walker v. Bowen*, 826 F.2d 996, 999

(11th Cir.1987).

This court's review of the factual findings in disability cases is limited to

determining whether the record contains substantial evidence to support the ALJ's

findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*,

86 F.3d 1072, 1076 (11th Cir. 1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

   In determining whether substantial evidence exists, this court must

scrutinize the record in its entirety, taking into account evidence both favorable

and unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698,

701 (11th Cir. 1988); *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). This

court may not decide facts anew, re-weigh evidence or substitute its judgment for

that of the ALJ, even if the court finds that the weight of the evidence is against

the Commissioner's decision. *Martin*, 894 F.2d at 1529. This court must affirm the

decision of the ALJ if it is supported by substantial evidence. *Miles v. Chater*, 84

F.3d 1397 (11th Cir. 1996); *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983).

   This court must also be satisfied that the decision of the Commissioner is

grounded in the proper application of the appropriate legal standards. *McRoberts*

*v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  No presumption of validity

attaches to the Commissioner's determination of the proper legal standards to be

applied in evaluating claims.  *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.

1987)(*citing Wiggins v. Schweiker*, 679 F.2d 1389 (11th Cir. 1982)); *Davis v.*

*Shalala*, 985 F.2d 528 (11th Cir. 1993). The Commissioner's "failure to ... provide

the reviewing court with sufficient reasoning for determining that the proper legal

analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

Having considered the entire record the court finds that the decision of the ALJ is supported by substantial evidence.  The ALJ properly found that plaintiff had an RFC for a range of sedentary work and that plaintiff has skills from past

relevant work that are transferable to other jobs in the economy.  Thus, substantial evidence supports the ALJ's finding that plaintiff is not disabled.

The ALJ's decision is supported by the evidence in record showing that the treatment of plaintiff since 2007 has been only routine and conservative in nature. After his January 2007 emergency room visit, the exam findings were unremarkable – for example, there was no instability on flexion extension; plaintiff's gait was grossly normal; and the spine was without signs of trauma, masses, or unusual hair or pigment; and there was no tenderness of the spinous processes, paraspinal region SI joint, PSIS, CVA or trochanter.  Additionally, since the May 2007 onset date, plaintiff's physical exams with the VA were not indicative of someone who is disabled.  There were few reported problems and the exam findings were unremarkable – for example, on June 14, 2007, the VA reported there were no acute problems (R. 154, 351).  Plaintiff was found to have skipped physical therapy sessions and refused to get a TENS unit, as recommended by the VA doctors.  For almost an entire year, until November 2008, plaintiff left the state and did not seek treatment or visit with the VA.  When plaintiff did return, he reported no acute musculoskeletal problems, no dermatalogical problems, no cardiopulmonary symptoms, no mental health symptoms, and no neurological problems.  Plaintiff did want to get back on pain

medication.  His visits to the VA were mostly to get refills for prescription pain medication such as Codeine, Tylenol, Oxycodone, and Acetaminophen.

In further support of the ALJ's decision is the September 2007 disability benefits decision rendered by the VA.  Although the findings by the VA are not binding on the Secretary, they should be considered and entitled to great weight. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir.1983)(*citing Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981); *see also*, 20 C.F.R. § 404.1504; SSR 06-03p.  The VA awarded plaintiff 80% disability benefits, but found that the plaintiff was capable of gainful employment.  The VA found that medical evidence did not indicate increased severity in plaintiff's back disability, and in fact, it found improvement in the range of motion of the lumbar spine.  The VA also found that plaintiff's other service connected benefits had not increased in severity, except for the cervical spine, which warranted the minimum compensable evaluation.  The ALJ discussed the VA's finding that plaintiff was not entitled to individual unemployability, and therefore, his condition did not prevent him from maintaining employment, such as sedentary work.  Thus, substantial evidence supports the ALJ's RFC finding that plaintiff is capable of a range of sedentary work.

Plaintiff argues, unpersuasively, that the ALJ did not properly assess the

RFC of plaintiff.  First, plaintiff contends that the ALJ's RFC findings are not based on substantial evidence because there was no medical source opinion ("MSO") by any physician of record, examining or reviewing.  However, there is nothing in the regulations, rulings, or 11th Circuit precedent that requires a medical source opinion in the record.  In fact, the plaintiff concedes this in his brief.  Memorandum of Law in Support of Plaintiff's Argument, at 5 (doc. 8).  Plaintiff further contends that since there was no MSO the ALJ failed in its duty to develop a full and fair record by not ordering a consultative exam or having a medical expert testify.  However, an ALJ is not required to order a consultative examination or obtain medical expert testimony so long as the record contains sufficient evidence for the ALJ to make a decision.  *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also* 20 C.F.R. § 404.1545(a)(3).  As stated above, there is substantial evidence in the record of plaintiff's routine and conservative treatment from 2007-2009, as well as the VA determination on disability.  Additionally, no doctor who treated plaintiff stated he was unable to work.  Thus, the evidence of record was sufficient for the ALJ to make an informed decision.

Plaintiff also objects to the RFC decision because he contends the ALJ did not take into account plaintiff's complaints of pain.  However, it is the ALJ's duty

to evaluate the credibility of the complaints of pain when determining the RFC. *See* 20 C.F.R. § 404.1545, 404.1546; *Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11 th Cir. 1984).  There was substantial, objective evidence in support of the ALJ's determination on plaintiff's credibility. *See* 20 C.F.R. 404.1529(c).  As stated above, plaintiff's treatment records after the alleged onset date indicate routine and conservative treatment of plaintiff and there were no acute problems. In addition, the VA's disability determination supports the ALJ's determination that plaintiff's complaints of severe pain are inconsistent with the treatment records.

The ALJ properly determined plaintiff could perform the exertional demands of sedentary work with a sit/stand option.

The ALJ then properly fulfilled its burden at step five of the process, finding that under rules 201.15 and 201.22 of the Medical-Vocational Guidelines, combined with the VE testimony, plaintiff could perform other work in the economy.  20 C.F.R. § 404, subpt. P, app. 2.  The plaintiff contends that the ALJ was in error in its determination for various reasons.  First, plaintiff contends the ALJ failed to take into account plaintiff's pain both in posing its hypothetical questions to the VE as well as in applying the Medical-Vocational Guidelines. For the reasons stated above, plaintiff's argument is unpersuasive.  The plaintiff's

second argument is that he is disabled on a mandatory basis under Medical-Vocational Rule 201.14.  20 C.F.R. § 404, subpt. P, app. 2.  However, the argument relies on the contention that plaintiff has no transferable skills from his past work, yet the VE testified and the ALJ found plaintiff did have transferable skills.  Transferable skills are those that "can be used in other jobs, when the skilled or semi-skilled work activities [plaintiff] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."  20 C.F.R. § 404.1568(d)(1).  The VE found that plaintiff had skilled work experience providing the following transferable skills: scheduling, record keeping, and inventory.  The ALJ properly relied on the testimony of the VE that plaintiff had transferable skills and could perform other work.

The ALJ properly found plaintiff was not disabled, and substantial evidence supports the ALJ's decision.

## Conclusion

Having considered all of the foregoing, the court is of the opinion that the Commissioner's decision is supported by substantial evidence, and thus, is due to be and is hereby **AFFIRMED**, which the court shall do by separate order.

**DONE** and **ORDERED** this the 12th day of April 2011.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE